1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9          EASTERN DISTRICT OF CALIFORNIA

10

11   KEVIN ARTHUR PULIDO,                 Case No. 1:23-cv-00522-EPG

12              Plaintiff,                 FINAL JUDGMENT AND ORDER
                                           REGARDING PLAINTIFF'S SOCIAL
13       v.                                SECURITY COMPLAINT

14   COMMISSIONER OF SOCIAL                (ECF Nos. 1, 11).
     SECURITY,
15

16              Defendant.

17

18       This matter is before the Court on Plaintiff's complaint for judicial review of an

19   unfavorable decision by the Commissioner of the Social Security Administration regarding his

20   application supplemental security income benefits. The parties have consented to entry of final

21   judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with

22   any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 10).

23       Plaintiff raises the following issue: "The ALJ erred in the evaluation of Plaintiff's pain

24   testimony." (ECF No. 14 at 18).

25       Having reviewed the record, administrative transcript, parties' briefs, and the applicable

26   law, the Court finds as follows:

27   //

28

1

I.      **ANALYSIS**

Plaintiff challenges the following RFC assessed by the ALJ:

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except with the following additional limitations. The claimant can lift and carry, push and pull 50 pounds occasionally and 25 pounds frequently; can frequently stoop, balance, kneel, crawl, crouch, and climb. He must avoid concentrated exposure to extreme heat, extreme cold, humidity, and pulmonary irritants. He can understand, remember, and carry out simple tasks and make simple work-related decisions; can have frequent work-related interactions with supervisors, and occasional work-related interactions with coworkers and the general public; and can have occasional changes in the work setting.

(A.R. 19, 22-23).

Plaintiff contends the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's allegations that he is unable to maintain work due to his severe mental impairments, i.e., post-traumatic stress disorder (PTSD), major depressive disorder, anxiety, attention-deficit hyperactivity disorder, borderline personality disorder, and polysubstance abuse. Specifically, Plaintiff testified that he experiences a heightened fear response, difficulty dealing with people, anxiety, anger issues, isolation issues, and difficulty in crowds. (*Id.*) (citing, generally, A.R. 43-53).

A.      **Legal Standards**

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

However, "[t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th

489, 499 (9th Cir. 2022). An ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995); *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Accordingly, our next task is to determine whether the ALJ's adverse credibility finding of [plaintiff's] testimony is supported by substantial evidence under the clear-and-convincing standard."). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted).

As the ALJ's RFC assessment is ultimately at issue here, the Court notes that a claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted). In reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g).

**B.    AlJ's Opinion**

Here, the ALJ provided the following recitation of Plaintiff's subjective complaints:

> The claimant alleges that he is disabled because of his impairments. At the hearing, he testified that he gets anxious around crowds. He reported that he had begun to feel this anxiety around crowds after he was assaulted in about 2018. He reported that he has been hearing voices and has to have music in his ears most of the time but he denied that the voices ever command him to take action. He alleged that the voices could be a side effect from his medications, but he is not sure. He denied having any specific physical limitations but reported having asthma, which he said is managed. He alleged that he sometimes has panic attacks. He alleged difficulty concentrating but stated that he can make his own meals and do basic chores. He reported that he has had some arguments with care providers before and can be set off by the way someone speaks to him. He indicated that he

is pretty good at remembering to take medications and that his medications help. The claimant reported that he has not used methamphetamine in about a year.

He also has completed written function reports alleging his abilities and limitations. On his July 2021 report, he alleged that has several difficulties, such as with controlling his emotions, focusing, getting along with others, and following instructions. Yet, he reported that he could prepare simple meals, shop, and manage money (Exhibit 7E). However, he indicated that he was homeless on his more recent report from January 2022 (Exhibit 18E).

(A.R. 23).

Thereafter, the ALJ summarized the medical record. The ALJ noted Plaintiff's "significant history of mental health issues and substance abuse, including some psychiatric hospitalizations (Exhibits 13F, p. 1, 5-9), that predate the protective filing date of June 16, 2021." (A.R. 24). The ALJ referenced Plaintiff's intermittent reports of suicidal ideation, anxious mood, and depression. (*See* A.R. 24, citing A.R. 547 (June 2021 progress report: "Client reported Suicidal Ideation with no intent to act on his thoughts due to life stressors."), A.R. 999 (July 2021 progress report noting anxious and depressed mood), A.R. 996 (August 2021 progress report of anxious mood); A.R. 25, citing A.R. 1201 (May 2022 progress report of anxious mood), A.R. 1234 (June 2022 progress report: "Client informed, that they are feeling down, and sad. Client informed that their suicidal ideations are increasing, and informed they were going to the Kaweah Delta Mental Health Hospital.")). The ALJ also noted that Plaintiff intermittently denied suicidal ideation. (A.R. 24 ("In July 2021, the claimant again sounded calm and logical and denied having any suicidal ideation."); A.R. 25 ("[B]ut he noted that the claimant was not psychotic, suicidal, or in an acute situation [in December 2021].")). The ALJ also briefly mentioned Plaintiff's two psychiatric holds and subsequent hospital stays:

In early September 2021, the claimant was reportedly struggling with his mental health and was noted to be out of his medications since he had not gone to pick them up from the pharmacy. He denied drug use but reported being depressed (Exhibit 9F, p.15). He was then hospitalized a few days later after attempting to overdose on medication and was admitted on a 5150 hold. The claimant tested positive for COVID-19 during the hospitalization and was transferred to a medical floor because the psychiatric department could not keep the claimant after he tested positive. He was required to quarantine prior to returning to the psychiatric department, and on reevaluation he was determined to be psychiatrically stable and he was found to be safe for a discharge after 10 days of quarantine, but the claimant left prior to being formally discharged (Exhibit 6F, p. 40-41, 88-90).

. . .

> Then, in June 2022, he indicated that he was feeling down and sad and having
> increased suicidal ideation and wanted to go to the hospital (Exhibit 14F, p. 48).
> He was hospitalized for about a week in late June 2022. The hospital records show
> that he had not taken his medications for a few weeks and that he was feeling
> overwhelmed. He was started on Duloxetine and by the time of discharge he
> denied suicidal ideation, his mood was better, and he was indicated to be
> cooperative with fair insight and judgment (Exhibit 13F, p. 12-14).

(A.R. 24-25). The ALJ also concluded that both Plaintiff's reported activities of daily life and

record of symptom improvement with treatment did not support Plaintiff's allegations:

> The claimant has described daily activities that are not limited to the extent one
> would expect given the allegations of disability. For example, the claimant told the
> internal medicine consultative examiner in October 2021 that he can cook, clean,
> drive, shop, and perform activities of daily living (Exhibit 7F). Next, although the
> claimant has experienced exacerbations in symptoms at times, he testified that his
> medications have been helping. Similarly, his recent treatment records state that
> the claimant's current regimen has been working extremely well (Exhibit 14F, p.
> 7-9). Additionally, although the claimant has displayed irritability and frustration
> at times, he has reported that he is working to manage his stressors and to socialize
> more (Exhibit 14F, p. 36-37, 40).

(A.R. 25-26). Finally, the ALJ noted that Plaintiff's testimony that he experiences auditory

hallucinations was not supported by the medical evidence and contradicted by Plaintiff's own

subjective reports. (A.R. 26).

### C.    Discussion

As to Plaintiff's subjective complaints, the ALJ concluded that Plaintiff's "medically

determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R.

24). Accordingly, because there is no affirmative evidence showing that Plaintiff was

malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by

substantial evidence, for not giving full weight to Plaintiff's symptom testimony. The ALJ

discounted the severity of Plaintiff's subjective complaints for three main reasons: (1)

inconsistencies between Plaintiff's subjective complaints and the objective medical evidence (2)

Plaintiff's record of improvement; and (3) Plaintiff's ability to engage in certain activities of daily

living. The Court considers each of these bases in turn.

### 1.    Inconsistency with Record

Throughout the summary of the medical record, the ALJ indicated that

Plaintiff's subjective complaints were inconsistent with the medical record, vaguely noting the

medical evidence did not "entirely support" the extent of Plaintiff's subjective allegations. (A.R. 24).

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Thus, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). But if an ALJ discounts a claimant's testimony on this basis, the ALJ must do more than offer "non-specific conclusions that [a claimant's] testimony was inconsistent with her medical treatment." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).

Plaintiff argues the ALJ simply summarized the medical record without explaining what evidence undermined Plaintiff's subjective complaints. (ECF No. 14 at 19-21). Defendant argues that the ALJ's reliance on Plaintiff's "overall conservative treatment", reports of improvement, and stable condition with treatment was sufficient to reject Plaintiff's subjective complaints. (ECF No. 18 at 7- 11). Upon review of the parties' arguments and the ALJ's decision, the Court concludes that Plaintiff has the better argument.

The ALJ's summary of the record fails to identify the specific testimony that is purportedly undermined by the medical evidence. *See Leal v. O'Malley*, No. 1:22-CV-0759 JLT GSA, 2024 WL 1304921, at *7 (E.D. Cal. Mar. 27, 2024) ("Unless the ALJ links the claimant's testimony to the observations an ALJ makes as part of the summary of the medical record, the summary is not sufficient to reject a claimant's subjective statements.") (quotation marks and citation omitted). For example, while the ALJ notes that treatment records consistently reported Plaintiff as sounding "calm and logical," the ALJ does not explain why this is material in discounting Plaintiff's subjective complaints regarding his anxiety and depression. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("[O]bservations of cognitive functioning during therapy sessions, [such as "good eye contact, organized and logical thought content, and focused attention"], do not contradict [a claimant's] reported symptoms of depression and anxiety.").

The records cited to by the ALJ do reflect some "positive" mental status examination results, i.e., times where Plaintiff denied suicidal ideation or did not appear psychotic. However,

Plaintiff's mental status examination results also report Plaintiff as depressed, anxious, and with impaired judgment. These mental status examinations, as well as Plaintiff's other treatment records, reflect ongoing mental health symptoms and diagnoses, and treatment for those mental health problems. For example, the ALJ's decision omits the full context of Plaintiff's hospitalizations. Plaintiff was admitted at Kaweah Mental Health on September 6, 2019, pursuant to a psychiatric hold after Plaintiff "presented to the ED hopeless and depressed and admitted to taking 8 of his PTSD medications and later reported suicidal ideation with a plan to hang himself." (A.R. 794). Plaintiff was diagnosed as having a bipolar depressed episode. (A.R. 820). Plaintiff was not cleared as psychiatrically stable until September 13, 2021. (A.R. 747). Although the ALJ noted that Plaintiff was found "safe for discharge" on September 19, 2021, the treatment records cited by the ALJ reveal a lengthy hospital stay marked by acute symptomology consistent with Plaintiff's mental health history and prior hospitalizations. (*See* A.R. 821, 812, 794-95). Once Plaintiff's "psychotropic medications were reconciled during hospitalization" and Plaintiff "responded well to current regimen of Abilify 5mg daily, Zoloft 50mg daily, and Melatonin 9mg QHS," Plaintiff was assessed as exhibiting "no evidence of psychosis or mania." (A.R. 735).

Following Plaintiff's hospitalization, the ALJ notes that Plaintiff "reported feeling like his medication was helping" in November 2021 and "good medication compliance" in April 2022. (A.R. 25). However, Plaintiff was admitted for a second time to Community Medical Center on June 21, 2022, pursuant to a psychiatric hold after Plaintiff attempted to strangle himself with a towel. (A.R. 1081). While the ALJ states that "[t]he hospital records show that he had not taken his medications for a few weeks and that he was feeling overwhelmed," (A.R. 25, citing A.R. 1077-1079), and that Plaintiff's mood symptoms improved upon treatment, the hospital records also state that "Patient reported AH telling him to kill self." (A.R. 1077; *see also* A.R. 1079 (describing course of treatment during June 2022 hospital stay, including prescribed Abilify, Duloxetine [commonly known as Cymbalta], Melatonin and Ativan, daily medication management, and observed medication compliance)).

This record of cyclical symptomology made it all the more important for the ALJ to identify the evidence that specifically undermined Plaintiff's complaints. *See Smith v. O'Malley*, No. 1:21-CV-0312 JLT BAM, 2024 WL 1253852, at *3 (E.D. Cal. Mar. 25, 2024) ("However, if

an ALJ cites the medical evidence, it is not sufficient for the ALJ to simply state that the testimony is contradicted by the record. Rather, an ALJ must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.") (quotation marks and citation omitted).

The ALJ's opinion also notes that Plaintiff's hearing testimony that he experiences auditory hallucinations due to his new medication regimen was undermined by Plaintiff's previous reports to medical providers that he "usually" only experienced hallucinations while engaging in substance abuse or where he denied experiencing audio or visual hallucinations. (A.R. 26). However, the ALJ did not otherwise explain how this inconsistency called into question Plaintiff's testimony that he feels unsafe five or six days out of a week when he is in a manic period and that his PTSD symptoms are exacerbated by being around other people. (*See* A.R. 44, 52). More importantly, as Plaintiff points out, the fact that Plaintiff denied in the past audio or visual hallucinations is not inconsistent with Plaintiff's testimony at the October 2022 administrative hearing that he currently hears voices as a side effect of his new medication. (*See* ECF No. 14 at 25).

Accordingly, the ALJ failed to sufficiently undermine Plaintiff's subjective complaints as inconsistent with the record medical evidence.

### 2.    Record of Improvement

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of ... symptoms." 20 C.F.R. § 404.1529(c)(3); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). An ALJ cannot "singl[e] out a few periods of temporary well-being from a sustained period of impairment and rel[y] on those instances to discredit [the claimant]." *Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014). The Ninth Circuit has emphasized this is particularly true in the context of mental health impairments:

> [I]t is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an

ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working. . . Reports of "improvement" in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms. *See Ryan,* 528 F.3d at 1200–01 ("Nor are the references in [a doctor's] notes that Ryan's anxiety and depression were 'improving' sufficient to undermine the repeated diagnosis of those conditions, or [another doctor's] more detailed report."). They must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace. . . While ALJs obviously must rely on examples to show why they do not believe that a claimant is credible, the data points they choose must *in fact* constitute examples of a broader development to satisfy the applicable "clear and convincing" standard.

(*Id.* at 1017-1018).

Plaintiff argues the ALJ improperly relied only on medical records from June and July 2022 "to support the conclusion that Plaintiff's medications were effective in reducing his mental symptoms[.]" (ECF No. 14 at 23). The Commissioner asserts the ALJ correctly concluded that Plaintiff's stabilization when compliant with medication and pursuing clinical treatment "were not consistent with allegations of daily severe symptoms and work-reclusive limitations." (ECF No. 18 at 8). In reply, Plaintiff argues this a "post-hoc rationalization" not articulated in the ALJ's decision. (ECF No. 19 at 5).

On review, the Court finds the ALJ failed to account for the cyclical nature of Plaintiff's mental health symptoms when relying on Plaintiff's improvement as a reason to discount Plaintiff's symptom testimony. Moreover, although the ALJ appears to connect Plaintiff's periods of decompensation with Plaintiff's medication non-compliance, the ALJ did not address whether Plaintiff's pattern of non-compliance was due to his mental health symptoms. *See Miranda W. v. Saul*, 509 F.Supp.3d 1270, 1282 (D. Ore. 2020) ( remanding, in part, "Plaintiff's inability to track and reliably take the multiple medications prescribed to her was another manifestation of her severe mental health symptoms").

The Court determines, therefore, that Plaintiff's record of improvement was not a clear and convincing reason for discounting Plaintiff's subjective symptom testimony.

\\

\\

9

### 3. Daily Activities

Plaintiff also challenges the ALJ's reasoning that Plaintiff's daily activities were inconsistent with Plaintiff's symptom allegations regarding his severe PTSD, depression, anxiety, ADHD, and borderline personality disorder. (ECF No. 14 at 21-23)

A plaintiff's engagement in daily living activities can support an adverse credibility determination when such activities are incompatible with the severity of plaintiff's alleged symptoms. *See Ghanin*, 763 F.3d at 1165. "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Trevizo*, 871 F.3d at 682. An ALJ may also rely on a claimant's daily activities to support an adverse credibility determination when those activities "meet the threshold for transferable work skills"; *i.e.*, where she "is able to spend a substantial part of ... her day performing household chores or other activities that are transferable to a work setting." *Orn*, 495 F.3d at 639. However, an ALJ "must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (citation and alteration omitted).

Here, the ALJ cited Plaintiff's reports that he was able to prepare simple meals, shop, manage money, clean, drive, and perform activities of daily living. The Commissioner argues the ALJ properly relied on Plaintiff's reported daily activities as "more consistent with the residual functional capacity determination rather than an alleged inability to do all types of work." (ECF No. 18 at 10-11).  However, the activities cited by the ALJ do not contradict Plaintiff's allegations of anxiety, difficulty interacting with other people, and limited emotional control. Further, the ALJ did not make any specific findings nor point to any record evidence to support the conclusion that these activities were in some way transferable to a work setting.

In conclusion, Plaintiff's ability to perform some daily activities does not provide a clear and convincing reason to discount his subjective complaints.

## II. REMEDY

Based on the foregoing, the Court finds the ALJ erred by failing to set forth clear and convincing reasons supported by substantial evidence to discredit Plaintiff's subjective symptom testimony. An error is harmless if (1) "it is inconsequential to the ultimate nondisability

determination," or (2) "if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Triechler v. Commissioner of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). Here, the Court finds that the ALJ's error was not harmless, because crediting Plaintiff's testimony as true would likely have affected the RFC finding.

Upon a finding of harmful error, the Court has discretion to remand or reverse and award benefits "with or without remanding the cause for a rehearing." *Treichler*, 775 F.3d at 1099 (citing 42 U.S.C. § 405(g)); *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (citation omitted). The Ninth Circuit applies the "credit-as-true" standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; (2) the record has been fully developed, there are no outstanding issues that must be resolved before a determination of disability can be made, and further administrative proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). A court may also remand for a further determination of whether benefits are due with instructions for the ALJ to credit the claimant's symptom testimony. *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009) (citing *Hammock v. Bowen*, 879 F.2d 498, 503-04 (9th Cir. 1989)).

Here, Plaintiff asks that this case be remanded for further proceedings and does not request an award of benefits. (ECF No. 14 at 26). In this case, further proceedings would allow the ALJ to reevaluate whether additional limitations are warranted in Plaintiff's RFC after crediting Plaintiff's subjective symptom testimony as true.

## III.    CONCLUSION

Accordingly, IT IS ORDERED that the decision of the Commissioner of the Social Security Administration is reversed and remanded for further proceedings so that the ALJ may determine whether additional limitations are warranted in Plaintiff's RFC after crediting Plaintiff's subjective symptom testimony as true. If a new RFC is warranted, the ALJ should conduct further proceedings as necessary to render a determination of disability.

\\\

1    The Clerk of the Court is directed to enter judgment in favor of Plaintiff and to close this

2    case.

3

4    IT IS SO ORDERED.

5    Dated:    **July 8, 2024**                    /s/ _Erica P. Grosjean_

6                                                  UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28